**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Herring,**

Petitioner,

13 Civ. 8946 (CS)(LMS)

*- against -*

**Capra,**

**REPORT AND**
**RECOMMENDATION**

Respondent.

**To: The Honorable Cathy Seibel, U.S.D.J.[1]**

On December 17, 2013, Petitioner Carlos Herring ("Petitioner"), proceeding *pro se*, filed

a Petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (the "Petition"), in which he

challenged his 2007 state court conviction for Murder in the Second Degree, Criminal Possession

of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and

Assault in the Second Degree, and his sentence of a term of imprisonment of from twenty-five

years to life for the murder count, a determinate term of imprisonment of seven years on the

second-degree weapons possession count to run concurrently to the murder count, a determinate

term of imprisonment of seven years on the third-degree weapons possession count to run

consecutively to the murder count, a determinate term of imprisonment of seven years on the

second-degree assault count to run consecutively to the murder count, and terms of post-release

supervision.  D.E. 2; S. 61-63.[2]  The Petition sets forth three grounds for relief: (1) juror

misconduct, (2) loss of *Rosario*[3] material, and (3) unauthorized sentence.  For the following

---

[1] On February 20, 2014, Petitioner's application was referred to this Court by the
Honorable Cathy Seibel.  D.E. 7.
[2] Numerals preceded by "S." refer to the transcript of Petitioner's sentencing.
[3] *People v. Rosario,* 9 N.Y.2d 286 (1961).

1

reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition be denied in its entirety.

## I.    Procedural History[4]

In February of 2010, Petitioner filed a brief in the Appellate Division, Second Department.  Petitioner raised the following five claims: (1) Petitioner was deprived of his constitutional right to a trial by twelve jurors who "actually agree" on the verdict when a juror slept during trial and deliberations and the trial court erred in failing to dismiss the sleeping juror, (2) the trial court committed reversible error for failing to impose a sanction on the prosecution for the destruction of *Rosario* material, (3) Petitioner's conviction was against the weight of the evidence, (4) Petitioner's determinate term of imprisonment of seven years for the third-degree weapons possession count was unauthorized by statute, and (5) Petitioner's overall sentence was harsh and excessive and his consecutive sentence for the third-degree weapons possession count was improper.  D.E. 30; SR 1.[5]  In May of 2010, the People filed a brief in opposition (D.E. 31; SR 74), and in June of 2010, Petitioner submitted a reply (D.E. 31; SR 139).  On January 18, 2011, the Appellate Division, Second Department, affirmed Petitioner's judgment of conviction. *People v. Herring,* 80 A.D.3d 711 (2d Dept. 2011).  On October 30, 2012, the New York State Court of Appeals affirmed Petitioner's judgment of conviction. *People v. Herring,* 10 N.Y.3d 1094 (2012).

---

[4] A factual recitation of the underlying crime is unnecessary to resolve Petitioner's claims.

[5] In addition to its response, Respondent electronically filed the entire state court record, including both the transcript and state court filings.  The electronically filed record of the state court filings is bates-stamped with consecutive numerals preceded by "SR."  Accordingly, in citing to a particular document or portion of the state court record, the Court will reference both the docket entry and the appropriate SR number.

On December 17, 2013, Petitioner filed the instant Petition. D.E. 2. In February of 2014, Petitioner filed a letter seeking a stay of his Petition in order to raise unexhausted claims in state court. D.E. 8. In an Order dated February 24, 2014, the undersigned denied Petitioner's request for a stay. D.E. 8. On March 25, 2014, Respondent opposed the Petition. D.E. 10-11. On June 10, 2014, the undersigned denied Petitioner's renewed application to stay the Petition. D.E. 40. On July 10, 2014, Petitioner filed a reply. D.E. 41.

## III.    Discussion

### A.    Standard of Review

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254.

Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether Petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If a petitioner has met these threshold requirements, a federal district court generally may hear an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to a state court judgment "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).

Under AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review,

3

"'[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 - 91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B) (i) there is an absence of available State corrective process; or
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. *Picard*, 404 U.S. at 275 - 76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." *Daye*, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the due process clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for

4

relief. *Klein*, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented"

even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in

asserting his or her claim before the state court, did one of the following: "(a) reli[ed] on pertinent

federal cases employing constitutional analysis, (b) reli[ed] on state cases employing constitutional

analysis in like fact situations, (c) assert[ed] . . . the claim in terms so particular as to call to mind

a specific right protected by the Constitution, [or] (d) alleg[ed] . . . a pattern of facts that is well

within the mainstream of constitutional litigation." *See Daye*, 696 F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate

state court and having been denied relief, the petitioner must appeal his or her conviction to the

highest state court. *Klein*, 667 F.2d at 282. Where a petitioner fails to present his or her federal

constitutional claim to the highest state court, the claim cannot be considered exhausted. Id.

(citing *Williams v. Greco*, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another

avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies

by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state

methods for collaterally attacking his or her state conviction. *See Klein*, 667 F.2d at 282 (citing

*Johnson v. Metz*, 609 F.2d 1052, 1055 - 56 (2d Cir. 1979)). If collateral relief is denied, the

petitioner may satisfy the exhaustion requirement by employing the state appellate procedures

available for review of such denial. *Id*. at 283.

A petitioner "need not have invoked every possible avenue of state court review." *Keane*,

394 F.3d at 73. Instead, a petitioner must give the state courts "one full opportunity" to resolve

any constitutional issues by invoking one complete round of the State's established appellate

review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A *habeas* petitioner who fails

to meet a state's requirements to exhaust a claim will be barred from asserting that claim in

5

federal court unless he or she can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Even where a timely and exhausted *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman*, 501 U.S. at 730; *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Serv.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740). A decision will be "adequate" if it is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–424 (1991)).

Provided that a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

6

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted). The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 68-69 (citation omitted). In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain *habeas* relief." *Id.* (internal quotation marks and citations omitted).

### B.    Petitioner's *Rosario* and Sentencing Claims

Petitioner claims that the trial court erred in failing to impose a sanction for the People's loss of *Rosario* material and that his consecutive sentence for the count of criminal possession of a weapon in the third degree was improper. These claims, however, were not presented as federal claims in state court. When Petitioner raised these claims in his direct appeal and in his leave application and brief to the New York State Court of Appeals, he relied on state law. Petitioner did not assert a federal constitutional violation or engage in any type of constitutional analysis. In its rejection of these claims, the Appellate Division and the New York State Court of Appeals did not cite a single federal case or engage in any federal constitutional analysis.

Notably, with respect to his *Rosario* claim, Petitioner did not assert that he was deprived of his

right to exculpatory material under *Brady v. Maryland,* 373 U.S. 83 (1963). Unlike a *Brady*

claim, a claim predicated solely on New York's *Rosario* rule "does not present an error of

constitutional magnitude and, therefore, is not cognizable on habeas review." *Rodriguez v. Smith,*

10 Civ. 8306 (KMK)(LMS), 2015 WL 6509153 at *16 (S.D.N.Y. Oct. 28, 2015) (noting that a

*Rosario* violation is a matter of state law that is not cognizable on *habeas* review); *Hill v.*

*Senkowski,* 409 F. Supp. 2d 222, 232 (W.D.N.Y. 2006). Similarly, Petitioner's sentencing claim

is predicated solely on New York's statutory sentencing scheme and is not cognizable on *habeas*

review. *Johnson v. New York,* 851 F. Supp. 2d 713, 722 (S.D.N.Y. 2012) ("Whether a sentence

should run concurrently or consecutively is purely an issue of state law and is not cognizable on

federal habeas review').

Since Petitioner has already raised these record-based claims on direct appeal, he retains

no other state procedural avenue to raise these claims. *See Aparicio v. Artuz,* 269 F.3d 78, 90-91

(2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division

and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago"),

citing N.Y.Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a). Petitioner's claims,

therefore, are deemed exhausted, but are procedurally defaulted. *Id.* at 90. Moreover, Petitioner

has failed to allege, let alone establish, cause for this default and prejudice arising therefrom, or

that a fundamental miscarriage of justice will occur if these claims are not considered. *Coleman,*

501 U.S. at 750; *Galdamez v. Keane,* 394 F.3d 68, 72-74 (2d Cir. 2005). Accordingly, this court

concludes, and respectfully recommends that Your Honor conclude, that these claims should be denied.[6]

### C.   Petitioner's Sleeping Juror Claim

Petitioner asserts that he was deprived of his constitutional right to a twelve-member jury when the trial court declined to dismiss a juror who the court observed sleeping during portions of the trial and who was reported to have been sleeping during deliberations by another juror. This claim is not cognizable on habeas review and, in any event, the state court's merit-based rejection of his claim was not contrary to or an unreasonable application of Supreme Court precedent.

During trial, the court cleared the courtroom and informed the attorneys that the court had observed "on numerous occasions, to the point where I find it disturbing, that [Juror 11] appears to be sleeping, and I want to inquire of her if she has some type of illness or she's on some type of medication, because if she is not giving full attention to this case I may have to excuse her." D.E. 23; T. 2265-66.[7] The court then addressed Juror 11 and stated that the court had received complaints from other jurors and members of the public that Juror 11 appeared to be sleeping "an awful lot." The court inquired if she had some illness that was causing her to experience these "symptoms." Juror 11 stated that she had been taking cough medication that made her sleepy and that she would not take it anymore. The court then confirmed that Juror 11 understood the

---

[6] Petitioner asserts, in his reply, that the People's *Rosario* violation deprived him of due process under the Fourteenth Amendment. This assertion, however, was not raised in any of Petitioner's state court filings or in his initial Petition. Accordingly, to the extent that Petitioner's reply asserts a federal claim and assuming, arguendo, that this Court were to review a claim raised for the first time in a reply, the claim was still not fairly presented in state court and, therefore, is not cognizable on habeas review.

[7] Numerals preceded by "T." refer to the transcript of Petitioner's trial.

importance of listening and paying attention to the evidence.  The trial proceeded without objection from either party on this point.  D.E. 23; T. 2266-68.

Thereafter, during deliberations, Juror 7 sent a note to the court in which Juror 7 asked to speak to the court and explained that a juror was sleeping during deliberations.  Later that day, upon the request of Petitioner's counsel, and over the People's objection, the court individually questioned Juror 7.  Juror 7 identified Juror 11 as the sleeping juror and stated that the fact that Juror 11 was sleeping did not interfere with Juror 7's ability to participate in deliberations and that the conduct had not continued.  Juror 7 further informed the court that Juror 11 had not been participating in deliberations at all and had been sleeping over a "prolonged period" of deliberations.

The court then individually questioned Juror 11.

> THE CLERK: Number 11.
> THE COURT: Yes. I have to ask you if you suffer from any illness which would prevent you from continuing to serve as a qualified juror in this case?
> JUROR NUMBER 11: I didn't do anything.
> THE COURT: Okay. Are you under any medication due to an illness?
> JUROR NUMBER 11: No.
> THE COURT: Okay. Are you capable of fulfilling your duties as a sworn juror in this case?
> JUROR NUMBER 11: I don't know why I'm here.
> THE COURT: Okay. It was reported to this Court that perhaps you were sleeping during deliberations –
> JUROR NUMBER 11: I wasn't.
> THE COURT: Are you suffering from any illness that would prevent you from –
> JUROR NUMBER 11: No.
> THE COURT: -- prevent you from serving as a juror?
> JUROR NUMBER 11: No.
> THE COURT: Okay. Are you capable of fulfilling your duties as a sworn juror in this case?
> JUROR NUMBER 11: No.
> THE COURT: You're not capable?
> JUROR NUMBER 11: I'm capable to do this. I don't

know why I'm here.
THE COURT: I'm going to ask you again. I'll ask you the
question. Listen carefully. Are you capable of fulfilling your
duties as a juror in this case?
JUROR NUMBER 11: Yes.
THE COURT: Okay. Thank you very much. You can go back.
Oh, I'll advise you, do not discuss with your fellow jurors what we
discussed here.
JUROR NUMBER 11: All right.

Following this exchange, Petitioner's counsel moved for a mistrial and the court denied the

motion.  D.E. 28; T. 3514-16.

On direct appeal, Petitioner argued, in part, that he was deprived of his constitutional

right to a trial by twelve jurors when the court denied his motion, pursuant to NYCPL § 270.35,

to remove a juror or grant a mistrial.  D.E. 30; SR 25.  The Appellate Division held that "[u]nder

the circumstances of this case, the County Court did not improvidently exercise its discretion in

denying the defendant's motion to discharge a certain juror or for a mistrial based on the alleged

inattentiveness of that juror, after making an inquiry of that juror." *Herring*, 80 A.D.3d at 711.

Thereafter, in rejecting this claim, the New York State Court of Appeals described the

factual circumstances of Petitioner's claim as follows:

> The judge learned that there was a potential problem with a
> juror during the morning of the second day of deliberations when
> juror 7 informed her that another juror was sleeping through
> deliberations. The court brought the jury into the courtroom and
> repeated the deliberation charge; the jurors then broke for lunch.
> Before the jury resumed deliberations in the afternoon, the judge
> asked juror 7 to identify the juror about whom he had complained,
> and juror 7 named juror 11.
> The judge told counsel that she would ask juror 11 if she was
> suffering from a "significant illness which is preventing her from
> fulfilling her duties," but that she would not ask her how much "time
> or effort she's putting into deliberations because I think that goes too
> far into the privacy of that jury room." Juror 11 was called into the
> courtroom. She expressed puzzlement as to why she was to be
> questioned by the judge. When told that "[i]t was reported ... that
> perhaps [she was] sleeping during deliberations," juror 11 declared

11

"I wasn't"; she unequivocally represented that she was ready, willing and able to discharge her duties as a juror.

The judge denied defendant's requests for discharge of the juror and a mistrial, noting that juror 11 gave assurances that she was capable of "fulfilling her duties as a sworn juror[,] ... is capable of serving as a juror, ... is prepared to do that," and that juror 7 "stated very clearly that the conduct he observed earlier is not continuing." The judge also "refuse[d] to inquire any further as to who is participating in deliberations, as to how they are participating in deliberations" as this would "invade[ ] the privacy and the province of that jury"; observed that she had "recharged [the jury] on deliberations and how to conduct themselves during deliberations"; and declined to "take the side of any juror" in light of juror 11's responses to her inquiries.

*Herring*, 19 N.Y.3d at 1094. The New York State Court of Appeals concluded that, "[w]hile there are circumstances where a juror's behavior during deliberations renders that juror grossly unqualified, in this situation the trial judge did not abuse her discretion when she decided that juror 11 was fit to serve on the jury." *Id.*

To the extent Petitioner is now asserting that he was deprived of a constitutional right due to the state court's failure to comply with NYCPL § 270.35 - the statute governing the replacement and discharge of a sworn juror - this claim raises an issue of state law and, therefore, is not cognizable on federal habeas review. *Faria v. Perez*, No. 04 Civ. 2411 (RRM), 2012 WL 3800826 at *12 (E.D.N.Y. Sept. 2, 2012); *Blonde v. Graham*, No 12 Civ. 1849 (JKS), 2014 WL 2558932 at *13 (N.D.N.Y. June 6, 2014). Alternatively, to the extent that Petitioner is raising a distinct federal constitutional claim based on juror misconduct and an alleged deprivation of his right to a jury, habeas relief is only available for juror misconduct where a petitioner demonstrates that he or she has suffered prejudice as a result of the misconduct. *Id.* Additionally, a trial court has "wide discretion to decide upon the appropriate course to take, in view of his [or her] personal observations of the jurors and parties," and a trial court is in the best position to assess alleged juror misconduct. *Id.* (citations omitted). Here, Juror 11 unequivocally

12

stated that she had not been sleeping during deliberations, stated that she was capable of

fulfilling her sworn duties as a juror, and expressed confusion as to why she was being

questioned by the court.  Under these circumstances, the trial court providently exercised its

discretion in denying counsel's application for a mistrial.  Indeed, under the deferential posture of

AEDPA, this Court has no basis in the record to second guess the state court's first hand

observations of Juror 11 or the careful manner in which the state court balanced its inquiry into

the allegation of juror misconduct with the need to preserve the privacy of jury deliberations.

Therefore, this Court concludes, and respectfully recommends that Your Honor conclude, that

Petitioner's claim should be denied.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor

should conclude, that the Petition should be dismissed in its entirety.  As the Petition presents no

questions of substance for review, I conclude, and respectfully recommend, that a certificate of

probable cause should not issue.  *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per

curiam*); *Alexander v. Harris*, 595 F.2d 87, 90–91 (2d Cir. 1979).  I further conclude, and

respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an

appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369

U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties

shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written

objections to the Report and Recommendation.  Such objections, if any, shall be filed with the

Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel,

United States District Court, Southern District of New York, 300 Quarropas Street, White Plains,

New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to the Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered. Requests for extensions of time to

file objections must be made to Judge Seibel.

Dated: ___11 | 2___, 2016
       White Plains, NY

                                          Respectfully submitted,

                                          Lisa Margaret Smith
                                          United States Magistrate Judge
                                          Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the Plaintiff.

14